# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21991-Civ-SCOLA/TORRES

INCARCERATED ENTERTAINMENT,
LLC., a Florida Limited Liability
Corporation, and EFRAIM DIVEROLI,
an individual,

  Plaintiffs,

v.

MATTHEW BEVAN COX, an individual,

  Defendant.
_____

MATTHEW BEVAN COX, an individual,

  Counter-Plaintiff,

v.

INCARCERATED ENTERTAINMENT,
LLC, a Florida Limited Liability Corporation,
EFRAIM DIVEROLI, an individual; WARNER
BROS. PICTURES, a division of WB STUDIO
ENTERPRISES, INC.; and the ESTATE OF
ROSS REBACK,

  Counter-Defendants.
_____/

1

# ORDER ON WARNER BROS.'S
# MOTION TO STAY MATTHEW COX'S THIRD-PARTY CLAIMS[1]

This matter is before the Court on Warner Bros. Pictures' ("Warner") motion to stay against Matthew Cox ("Mr. Cox"). [D.E. 29]. Mr. Cox responded to Warner's motion on October 15, 2018 [D.E. 36] to which Warner replied on October 18, 2018. [D.E. 42]. Therefore, Warner's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Warner's motion to stay the disposition of Mr. Cox's third-party claims is **DENIED**.

## I. BACKGROUND

Incarcerated Entertainment, LLC ("IE") and Efraim Diveroli ("Diveroli") (collectively, "Plaintiffs") filed this action on May 18, 2018 seeking a declaratory judgment as to the rights and status of a book entitled *Once a Gun Runner*. Plaintiffs' complaint, however, is not the first time that they have litigated a case against Mr. Cox. In 2016, Warner released the motion picture *War Dogs*. The movie is a dark comedy based on the reported story of several young men from Miami, including Diveroli, who secured a $300 million U.S. Defense Department

---

[1] Warner referred to its motion as a request to stay Mr. Cox's counterclaims against Warner. But, by definition, Mr. Cox's claims against Warner constitute a third-party claim because IE sued Cox and Cox, in turn, filed a counterclaim against IE and a third-party claim against Warner. *See e,.g.*, *Starr v. Prairie Harbor Dev. Co.*, 900 F. Supp. 230, 233 (E.D. Wis. 1995) ("Third-party claims are those in which a defendant claims a third-party is liable to the defendant for all or part of the plaintiff's claim against the defendant," whereas "[a]counterclaim is any suit by a defendant against the plaintiff including any claims properly joined with the claims against the plaintiff.") (citing Fed. R. Civ. P. 13(a)-(c)). We therefore construe Warner's motion as a request to stay Mr. Cox's third-party claims against Warner.

contract to supply arms to the Afghan Army – only to be convicted later for fraud. IE is a company formed by Diveroli and his business partner, Ross Reback ("Mr. Reback"), to monetize Diveroli's life story by self-publishing his memoir *Once a Gun Runner*.

In April 2016, IE sued Warner. IE's first complaint accused Warner and seven others of a conspiracy to steal secrets from Diveroli's memoir and of improperly using his name in the movie. Warner moved to dismiss showing that none of these claims had any basis in law, and IE abandoned its first complaint and hired new counsel. IE's amended complaint asserted four new causes of action: (1) violation of the Lanham Act (injunctive relief and damages), (2) violation of Florida's Deceptive and Unfair Trade Practices Act (injunctive relief), (3) and unfair competition (damages) – the same claims that Mr. Cox now asserts against Warner. The gravamen of IE's amended complaint was that, in marketing *War Dogs*, Warner unlawfully sold the film as the true story and as the unadulterated truth.

After the first lawsuit had been pending for approximately one year, Mr. Cox sought to intervene claiming that he was the rightful owner of the book. In his motion to intervene, Mr. Cox asserted that IE, Diveroli, and Mr. Reback conspired to steal his copyright and violated contracts among them related to the book. Before the case proceeded to summary judgment and after IE and Warner engaged in mediation and discovery, the parties settled their dispute. IE then filed a joint stipulation of dismissal with prejudice of all claims against all defendants. The district court subsequently ordered the case dismissed with prejudice.

3

On May 17, 2018, IE filed this lawsuit seeking a declaratory judgment that IE – and not Mr. Cox – owns the copyright and to prevent Mr. Cox from asserting additional claims based on his ownership of the book. On June 26, 2018, Mr. Cox filed an eleven-count counterclaim against Diveroli and IE and a four-count third-party complaint against Warner. On September 14, 2018, Mr. Cox filed an amended third-party complaint asserting five counts against Warner. [D.E. 27].

## II.   APPLICABLE PRINCIPLES AND LAW

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) ("At the outset, we stress the broad discretion district courts have in managing their cases."); *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre

Stays of proceedings can also promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions. *See Clinton,* 520 U.S. at 706; *see also American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1525 (11th Cir. 1984). In determining whether a stay is appropriate, courts examine the following four factors: (1) the likelihood of the moving party ultimately prevailing on the merits, (2) the extent the moving party would be

irreparably harmed, (3) potential for harm to the opposing party if the stay is issued and (4) whether issuing a stay would be in the public interest. *See Guirola–Beeche v. U.S. Dep't of Justice,* 662 F. Supp. 1414, 1417–18 (S.D. Fla. 1987). "Stay orders will be reversed when they are found to be immoderate or of an indefinite duration." *CTI–Container Leasing Corp. v. Uiterwyk Corp.,* 685 F.2d 1284, 1288 (11th Cir. 1982) (internal citations omitted).

In the absence of a dispositive motion, courts have also granted motions to stay in consideration of the following factors: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citing *Tap Pharmaceautical Products, Inc. v. Atrix Laboratories, Inc.,* 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); *Baxter International, Inc. v. Fresenius Medical Care Holdings, Inc.,* 2008 WL 4395854, at *3 (N.D. Ill. Sept. 25, 2008)).

For instance, one of the circumstances that have sometimes satisfied the aforementioned factors is the possibility of avoiding unnecessary expenses while the parties engage in mediation or settlement discussions that might conserve the parties' resources and promote judicial economy. *See, e.g., ArrivalStar, S.A. v. Blue Sky Network, LLC*, 2012 WL 588806, at *2 (N.D. Cal. Feb. 22, 2012) ("The Court concludes that Blue Sky has shown good cause to justify a stay of discovery pending

5

mediation. The Court finds that staying discovery pending mediation will conserve the resources of the parties and will not impose an inequity on any party."); *see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances and granting a stay to permit mediation (or to require it) will often be appropriate.").

### III. ANALYSIS

Warner's motion seeks to stay the disposition of Mr. Cox's third-party claims against Warner because Mr. Cox's allegations are contingent on him prevailing against IE. Warner argues that the primary issue underlying this case is who owns the copyright to the book *Once a Gun Runner*. If the Court finds that IE owns the book, then Mr. Cox has no standing to bring his false advertising and other claims against Warner concerning the marketing of the movie *War Dogs*. As such, Warner concludes that Mr. Cox's third-party claims should not proceed until we determine the underlying question of who owns the copyright to the book.[2] Warner believes that this is the most logical way to proceed because (1) if we find in favor of IE, Mr.

---

[2] Warner suggests that it has invested substantial time and resources defending itself in the first lawsuit, including expensive discovery. Warner believes that it should not be forced to spend additional money and resources while Mr. Cox and IE resolve their dispute as to who owns the book. However, Warner's contention misses the mark because it overlooks the fact that it may still be subpoenaed irrespective of whether Mr. Cox's third-party claims are stayed or not. This means that, in the disposition of the underlying action, Warner may still be subject to document productions and other discovery requests related to the ownership of the copyright.

6

Cox's claims against Warner must fail, (2) Warner will face undue prejudice in the absence of a stay, and (3) a stay will not prejudice Mr. Cox.

Mr. Cox's response is that this case is about not only about a dispute over a copyright but also about whether the initial lawsuit between IE and Warner was dismissed in bad faith because of an agreement that Warner entered into with IE for improper purposes. Mr. Cox claims that IE agreed to dismiss its lawsuit against Warner after Warner agreed to pay IE a substantial sum of money so that Warner could continue deceiving consumers into believing that the film *War Dogs* is a true story. Mr. Cox also argues that, if his third-party claims against Warner are stayed, it would be costlier and more difficult for him to obtain the evidence he needs to establish that IE participated in a conspiracy to facilitate a fraud.

After a thorough review of the arguments presented, we find that a stay of Mr. Cox's third-party claims against Warner will not necessarily conserve the resources of the parties or the Court. Warner presents a viable argument that Mr. Cox's third-party claims may fail if IE is the owner of the copyright. But, Warner's argument overlooks the fact that there is a substantial likelihood that there will be a duplication of discovery efforts if Mr. Cox prevails against IE. That is, Mr. Cox's claims presuppose the ownership of a copyright and an interconnected relationship on whether IE and Warner participated in a fraud to prevent Mr. Cox from establishing his ownership of *Once a Gun Runner*.

This means that the items produced in discovery are likely to touch upon *both* Mr. Cox's ownership of the copyright and any alleged fraud that took place between

7

IE and Warner. And if this is true, then the Court and the parties will inevitably engage in a duplication of discovery disputes and unnecessary litigation expenses – both of which could have been conserved if the parties had participated in the discovery process in the first instance. *See Hamilton v. Suntrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 85885 (S.D. Fla. Jan. 3, 2014) ("Motions to stay discovery 'are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'") (quoting *Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D. Fla. 1997)). Accordingly, we conclude that Warner's motion to stay the disposition of Mr. Cox's third-party claims against Warner pending a determination of the ownership of the copyright will create more case management problems than it solves and therefore Warner's motion is **DENIED**.[3]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Warner's motion to stay the disposition of Mr. Cox's third-party claims is **DENIED**. [D.E. 29].

---

[3] Warner separately argues that Mr. Cox's conspiracy claim should be denied as a matter of law because it runs afoul of the Noerr-Pennington doctrine and the First Amendment. But, the disposition of Warner's motion is more appropriately addressed in a motion to dismiss (which Warner filed on September 27, 2018 and remains pending before the Court [D.E. 30]) – not a motion to stay – and therefore Warner's motion in this respect is also **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of November, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge