United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Incarcerated Entertainment, LLC, and Efraim Diveroli, Plaintiff, <br><br> v. <br><br> Matthew Bevan Cox, Defendant/ Counter-Plaintiff | ) <br> ) <br> ) <br> ) Civil Action No. 18-21991-Civ-Scola <br> ) <br> ) <br> ) |

**Order Granting Plaintiffs' Motion for Summary Judgment**

This matter comes before the Court upon Plaintiffs Incarcerated Entertainment, LLC and Efraim Diveroli's motion for summary judgment. (ECF No. 77.) The Defendant filed a response (ECF No. 87) and the Plaintiffs timely replied. (ECF No. 95.) Upon review of the record, the parties' briefs, and the relevant legal authorities, the Court **grants** the Plaintiffs' motion. (**ECF No. 77**.)

**I.   Background**

Plaintiff Efraim Diveroli was awarded several hundred million dollars in arms and ammunition contracts by the United States government during the war on terror. He was later convicted of fraud and served time in prison. During his time in prison, he met Defendant Cox and executed a work-for-hire co-author agreement (the "Agreement"). (Compl. at 2, ECF No. 1.) According to the Agreement, Cox would assist Diveroli in writing a memoir of Diveroli's life. (*Id.* at ¶ 13.) Diveroli agreed to pay Cox 10% of royalties received by Cox for the book or any disposition of the work and 5% of royalties received by Cox from the sale of any derivatives of the work. (*Id.* at ¶ 15; ECF No. 1-3 at ¶ 11.) Under the terms of the Agreement, "[a]ll copyrights, renewals, and extensions thereof, in and to the material contained in the Work, shall be secured by [Diveroli] and held in his name, as the sole and exclusive author and proprietor thereof, together with all literary property and any other rights in the Work[.]" (ECF No. 1-3 at ¶ 2(a).)

On February 20, 2014, Diveroli registered his book, *Once a Gun Runner*, with the United States Copyright Office. He then assigned his rights in the book to Plaintiff Incarcerated Entertainment ("IE"). (ECF No. 1 at ¶ 19.) According to the complaint, IE has attemped to pay Cox his percentage of the gross proceeds for the sale of the book, but he has declined to provide payment instructions because he owes over $5 million in restitution to the government. (*Id.* at ¶ 22.) In 2016, Warner Bros. released the motion picture War Dogs, loosely based on the story of Diveroli and his associates. (*Id.* at ¶ 20.)

Following the release of the movie, IE sued Warner Bros. alleging copyright violations, conspiracy, and unfair competition. *See Incarcerated Entm't, LLC v. Warner Bros. Pictures,* No. 16-cv-1302-MSS-AAS (M.D. Fla. April 28, 2016). After the lawsuit had been pending for almost a year, Defendant Cox sought to intervene, claiming that he was the rightful owner of the book and copyright. (*Id.* at ECF No. 106.) Before the district court could rule on the motion to intervene, IE and Warner Bros. settled the dispute and filed a joint stipulation of dismissal with prejudice. (*Id.* at ECF No. 143.) Cox filed two separate appeals related to that case. The first was dismissed as moot by the Eleventh Circuit and the second was voluntarily dismissed by Cox.

On November 14, 2017, IE and Diveroli filed a state court complaint against Cox for declaratory judgment regarding the parties' rights under the work-for-hire agreement. *See Incarcerated Entm't, et al. v. Cox,* No. 2017-026376-CA-01 (11th Jud. Cir. Miami-Dade County). The state court complaint was removed to the Southern District of Florida on January 1, 2018. *See Incarcerated Entm't, et al. v. Cox,* No. 18-20023 (S.D. Fla. Jan. 1, 2018) (Moreno, J.). Judge Moreno dismissed the complaint without prejudice as duplicative of two cases pending in the Middle District of Florida. (*Id.* at ECF No. 8.)

On December 27, 2017, Cox filed a lawsuit in the Middle District of Florida against IE, Diveroli, and Warner Bros. claiming ownership of IE's copyright. *See Cox v. Incarcerated Entm't, LLC, et al.,* No. 17-cv-3108-T-35JSS (M.D. Fla. Dec. 27, 2017). On May 16, 2018, the district court dismissed the lawsuit after Cox failed to timely serve the parties. (*Id.* at ECF No. 14.) Two days later, IE and Diveroli filed the instant lawsuit against Cox seeking declaratory judgment regarding the Plaintiffs' rights under the Agreement and their exclusive copyright to the book. (ECF No. 1.) The Plaintiffs now move for summary judgment on their claim for declaratory relief. (ECF No. 77.)

## II.   Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. In reviewing a motion for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach,* 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1143 (11th Cir. 2007)). So, when a conflict arises between the facts presented by the parties, the Court must credit the nonmoving party's version. *Id.* The moving

party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "In a case involving contract interpretation, summary judgment is appropriate when the agreement is totally unambiguous[.]" *Dew Seven, L.L.C. v. Big Lots Stores, Inc.*, 354 F. App'x 415, 416 (11th Cir. 2009).

## III.  Subject Matter Jurisdiction

As an initial matter, the Court will address subject matter jurisdiction in this case. The Court raised this issue *sua sponte* earlier in the case (ECF No. 68) and the Defendant raises it again in his response to the Plaintiffs' motion for summary judgment. (ECF No. 85 at 4-5.) The Defendant argues that this case involves the interpretation of a contract under Florida law, and therefore does not raise a federal question. (*Id.*) Upon careful review, the Court disagrees with the Defendant's analysis.

This is an action for declaratory judgment. "[T]he Declaratory Judgment Act, does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989). There is no question that the parties are not diverse. Therefore, the question is "whether, absent the availability of declaratory relief, the instant case could nonetheless be brought in federal court." *Anand Vihar LLC v. Evans Group Inc.*, No. 16-cv-841, 2016 WL 9526560, at *1 (M.D. Fla. July 6, 2016). To help answer this question, the Eleventh Circuit has held that "a federal district court has subject-matter jurisdiction over a declaratory judgment action if . . . plaintiff's well-pleaded complaint alleges facts demonstrating that defendant could file a coercive action arising under federal law." *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003). "It follows then that district courts have subject matter jurisdiction over a declaratory judgment action that anticipates a copyright counterclaim." *Anand*, 2016 WL 9526560 at *2.

Here, the Defendant claims that he is entitled to the copyright at issue and filed a counterclaim for copyright infringement. (ECF No. 27.) Although the Defendant voluntarily dismissed his counterclaim (ECF No. 72), he recently filed another action in the Southern District of Florida against the Plaintiffs for copyright infringement, among other causes of action. *See Matthew Bevan Cox v. Efraim Diveroli, et al.,* Case No. 19-cv-23483-BB (S.D. Fla. Aug. 20, 2019). Because the Defendant could file, and has filed, a coercive counterclaim arising under federal copyright law, the Court finds that it has subject matter jurisdiction. *See Anand*, 2016 WL 9526560 at *2.

## IV.  Analysis

The Plaintiffs seek summary judgment on their claim for declaratory relief, arguing that the Agreement between Diveroli and Cox is unambiguous and shows that the Defendant has no ownership right or interest in the work created under the Agreement. (ECF No. 77 at 8.) In response, the Defendant does not argue with the Plaintiffs' interpretation of the contract terms. Instead, he argues that the contract is invalid because (1) it lacks consideration; (2) was procured by fraud; and (3) the Plaintiffs have unclean hands. Upon careful review of the parties' arguments, the Court grants the Plaintiffs' motion.

The contract provides that Florida state law shall govern. (ECF No. 1-3 at ¶ 19.) Under Florida law, if the language of a contract is clear and unambiguous, there is no need to resort to rules of contract construction. *Gables Ins. Recovery, Inc. v. Citizens Property Ins. Corp.*, 261 So. 3d 613, 624 (Fla. 3d DCA 2018). "In the absence of an ambiguity on the face of the contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." *Ferox, LLC v. ConSeal Int'l*, 175 F. Supp. 3d 1368, 1370 (S.D. Fla. 2016) (Gayles, J.) (citations and quotations omitted). "The words should be given their natural, ordinary meaning, and where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions or unexpressed intentions." *Id.* (citations and quotations omitted).

Here, the contract terms are clear and unambiguous. The contract provides that:

> All copyrights, renewals, and extensions thereof, in and to the material contained in the Work, shall be secured by [Diveroli] and held in his name, as the sole and exclusive author and proprietor thereof, together with all literary property and any other rights in the Work, the title thereof, and the characters and characterizations therein, in all language, forms, and media now or hereafter known. The foregoing shall include all literary rights, copyrights, and all intangible property rights of any kind or nature whatsoever in any oral or written material prepared for or by or made available to, [Cox] in connection with the Work and all intangible property rights in any tape recording made pursuant hereto. With respect to any oral or written material which shall not be directly or indirectly

> included or incorporated in the work, all rights in and to such material shall be the sole property of [Diveroli].

(ECF No. 1-3 at ¶ 2(a).) Moreover, the contract contemplated that the Plaintiff would register it with the Copyright Office under his name. "On completion of the work, it shall be registered in the name of [Diveroli], as the author and a copy shall be registered with the Copyright Office." (*Id.* at ¶ 2(c).) The Defendant "understands and agrees that he shall have no right, title, or interest of any kind or nature whatsoever in the Work or receive any compensation whatsoever except as provided herein." (*Id.* at ¶ 2(f).) Under the terms of the contract, the Defendant is entitled to 10% gross royalties received by Diveroli "or any business or corporation set up to receive income from the sale, license or disposition of the Work." (*Id.* at ¶ 11(b).) And 5% of gross royalties "actually received directly by Diveroli or any business or corporation set up to receive income from the sale, license or disposition of any derivatives and/or ancillary products developed from the Work." (*Id.* at ¶ 11(c).)

Based on the plain meaning of the contract, the Court finds that the Plaintiff is the exclusive owner of the work and any copyright associated with it. However, before the Court can enter summary judgment, it must address the Defendant's arguments.

The Defendant first attacks the contract by arguing that it lacks consideration. (ECF No. 85 at 7.) The Defendant argues that he did not receive a benefit nor did Diveroli suffer a detriment. (*Id.* at ¶ 33.) In order for a valid contract to exist, the "parties involved must mutually assent to the terms, and those terms must be supported by adequate consideration." *Canada v. Yak America*, No. 12-cv-22143, 2012 WL 4025745, at *2 (S.D. Fla. Sept. 12, 2012) (King, J.). "Consideration is only required to rise to the level of a peppercorn." *Delta Health Grp. Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 866 (11th Cir. 2009). "It is axiomatic that a promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." *Canada*, 2012 WL 4025745 at *3.

Here, there is no question that the contract was supported by consideration. Under the contract, Diveroli agreed to pay Cox $500 upfront, 10% of the royalties from the sale or license of the work, and 5% of the royalties for any income from the sale or license of any derivatives of the work. (ECF No. 1-3 ¶ 11.) According to Cox, this is "nothing more than a promise to do just a small part of something that copyright law already mandated[.]" (ECF No. 85 at ¶ 34.) There is no evidence in the record or legal citation supporting Cox's contention that copyright law "mandated" that Diveroli pay Cox royalties for the work. Instead, it was an agreement by Diveroli to "do something that [he] [was] not

bound to do." *Canada*, 2012 WL 4025745 at *3. Accordingly, the Court finds that the contract was supported by adequate consideration.[1]

Cox next argues that the contract was procured by fraud. According to Cox, Diveroli induced him to sign the contract by telling him that a lawyer had said it was necessary for Cox to sign the contract so that the money from the book would not be seized by the U.S. Government as part of Cox's restitution. Diveroli promised Cox that he would be taken care of no matter what. Cox was given little time to review the contract before he signed it. (ECF No. 85 at 11.) Cox was also falsely promised that he would be fairly credited for his work. According to Cox, Diveroli made these misrepresentations to induce Cox to sign the contract.

Cox's arguments fail. Cox does not explain or cite to any record evidence to support the narrative that he was somehow fraudulently induced to sign the Agreement under a threat of a restitution order or other false pretenses. The only citations in Cox's motion are to Cox's self-serving affidavit. "[C]onclusory, uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Kearny Constr. Co. LLC v. Travelers Case. & Sur. Co. of Am.*, No. 09-cv-1850, 2017 U.S. Dist. LEXIS 154224, at *31 (M.D. Fla. Aug. 16, 2017). "[T]o defeat a motion for summary judgment, [the party] must adduce specific evidence from which a jury could reasonably find in his favor; the mere existence of a scintilla of evidence in support of his position will be insufficient." *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11the Cir. 2013) (citations and quotations omitted). Moreover, Cox cannot use his self-serving affidavit to contradict the terms of the contract. "Under Florida law, a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Kennedy v. Deschenes,* No. 17-60110, 2017 WL 2223050, at *4 (S.D. Fla. May 19, 2017) (Scola J.). Here, the contract states that Cox "acknowledges that by signing this Agreement that he has read and understands this document[.]" (ECF No. 1-3 at ¶ 21.) He also agreed to relinquish all his rights to the work. (*Id.* at ¶ 2(g) (Cox "hereby irrevocably and absolutely assigns, conveys, and grants to [Diveroli]. . . all rights, title and interests of every kind, nature and description in and to all of [Cox's] services, rendered under this Agreement[.]")). Therefore, his claims that he was not aware of the terms or was fraudulently induced to sign it must fail.

---

[1] Cox also argues that he was never paid. (ECF No. 85 at ¶ 37.) However, that would be more appropriately litigated as a breach of contract claim, not as an attack on the adequacy of consideration.

Cox's last argument is based on a theory of unclean hands. Cox repeats his arguments regarding Diveroli's "false statements" and failure to credit or pay Cox for his work. (ECF No. 85 at 12.) The doctrine of unclean hands applies to equitable actions, not actions at law. *Regions Bank v. Old Jupiter, LLC*, No. 10-80188,2010 WL 5148467, *6 (S.D. Fla. Dec. 13, 2010) (Hurley, J.). "Suits for declaratory judgment are a statutory creation enacted by Congress in the Declaratory Judgment Act . . . and are neither inherently legal nor equitable in nature." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987) (citations omitted). "When determining whether a declaratory judgment action is legal or equitable, courts have examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act." *Id.* But for the Declaratory Judgment Act, the only way this action could have arisen is as a suit for copyright infringement or breach of contract. The contract claim is legal in nature but a copyright infringement action may be equitable, when seeking injunctive relief, or legal, when seeking damages. Although a close call, the Court finds that the Plaintiffs' complaint is primarily seeking a declaration of the Plaintiffs' rights under the contract. Therefore, it appears that the doctrine of unclean hands in inapplicable.

Furthermore, "even if the doctrine of unclean hands was available as a defense to plaintiff's claims, defendant has failed to point to sufficient evidence to create a question of fact as to this defense. The evidence cited by defendant is insufficient to support a finding that plaintiff engaged in conduct rising to the level of bad faith, trickery, deception, fraud, injustice or unfairness." *Trade Am Int'l, Inc. v. Cincinnati Ins. Co.*, No. 08-cv-3711-GET, 2010 U.S. Dist. LEXIS 152568, at *21-22 (N.D. Ga. June 4, 2010).

Cox also invokes Rule 56(d) to argue that discovery is not completed and additional discovery will shed light on Cox's arguments. (ECF No. 85 at 13.) Under Rule 56, "[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion. Fed. R. Civ. P. 56(d). Cox has not provided an affidavit or declaration putting forth specific reasons why he cannot present evidence to support his position. Accordingly, this argument also fails.

### V. Conclusion

Based on the foregoing, the Court **grants** the Plaintiffs' motion for summary judgment. (**ECF No. 77**.) The Court **directs** the Plaintiffs to file a proposed final judgment with the Court and send a word version of the proposed order to Chambers via email. The Clerk is directed to **close** this case. All pending motions are **denied as moot.**

**Done and ordered**, at Miami, Florida, on September 27, 2019.

                                                                                                                 _____
                                                                                                                Robert N. Scola, Jr.
                                                                                                                United States District Judge